## Mooney et al. v. Moore.

February 20, 1948.

Chester D. Adams, Judge.

Leer Buckley and Edward F. Prichard, Jr. for appellants.

Eldon S. Dummit, Weldon Shouse and Breckinridge & Breckinridge for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

On November 5, 1947, Thomas G. Mooney was selected Mayor of the City of Lexington and M. J. Anderson, Ben Bosworth, Henry M. Skillman, and Henry Hettel were selected as the Board of Commissioners, Henry M. Skillman being the only member of the outgoing Board of Commissioners who was re-elected.

On December 1, 1947, appellee, Austin Moore, was

appointed by the outgoing Board as City Manager to fill a vacancy in the office occasioned by the resignation of the former manager on November 28, 1947. He duly qualified and since that date has discharged the duties and functions of the office.

Appellants, Mayor Thomas G. Mooney and Commissioners Anderson and Bosworth, publicly announced that they would, immediately upon qualifying for office, vote to remove appellee from the post as City Manager. It appears that Henry M. Skillman and Henry Hettel, two of the Commissioners elected on an opposition ticket, refused to go along with appellants.

Appellee, on January 5th instituted this action seeking an injunction to restrain appellants from dismissing or removing him from the office, or from appointing or attempting to appoint any other person to the office. A temporary restraining order was issued.

On January 8, 1948, the chancellor heard the matter on appellants' general demurrer to the petition and on appellee's motion for a temporary injunction, and on January 10th overruled the demurrer, entered judgment for appellee, and issued a permanent injunction. Appellants prosecute this appeal.

The question presented is whether or not three of the five members of the Board of Commissioners of a city of the second class, having a City Manager form of government, may, under KRS 89.560, remove at will an incumbent City Manager who has served for less than six months.

KRS 89.560 provides:

"(1) The board of commissioners shall select and employ a city manager. He shall be selected solely on the basis of his executive and administrative qualifications. The choice shall not be limited to inhabitants of the city or state. He shall be employed for an indefinite period, in cities of the second and fourth classes, or for a period not exceeding four years in cities of the third class. He shall receive such compensation as may be determined by the board of commissioners. During the absence or disability of the city manager the board of commissioners shall designate some properly qualified person to perform the duties of the office.

"(2) In cities of the second class the city manager shall be removable at any time without cause by the vote of four of the members of the board of commissioners, and shall be removable at any time for cause, including willful neglect of duty, by a majority vote of the members of the board, but removal shall not be effected by a reduction in his compensation. If removed by the vote of less than four of the members of the board after having served for six months, he may in writing demand that written charges be filed against him by the board and a public hearing held before the board prior to the date on which his final removal shall take effect, but during the hearing the board may suspend him from office. The public hearing shall be fixed by the board not to exceed thirty days after demand therefor. The city manager may be represented by counsel and present evidence at the hearing. He may appeal to the courts from the decision of the board when removed by the vote of less than four of the five members of the board."

Appellants argue that the history and policy of KRS 89.560 clearly demonstrate that it was the purpose of the statute to establish a six months' probationary period during which the City Manager might be removed at will by a mere majority of the Board of Commissioners. They admit that the statute does not provide in specific terms the method by which a city manager may be removed when he has served for less than six months, but insist that less than four may remove him at will at any time within the six months, which they elect to call the probationary period. It is argued that since the words of the statute do not themselves answer the question, this court must then answer it, and in accordance with recognized rules of statutory construction and the necessary implications arising from the language, history, policy and intendment of the statute.

They insist that the purpose of the statute and the object which it sought to accomplish was the establishment of a six months' probationary period, and the fact that a distinction is made between the rights of the City Manager during the first six months of his incumbency and those during the period of his service afterwards clearly establishes the intendment of a six

months' probationary period. They admit it to be clear from the terms of the statutes that the City Manager may not, unless he has served for six months, demand the filing of formal charges and the right to a formal hearing as a condition precedent to his removal. But, they seem to take the position that because of a denial of these rights he has no rights during this first six months, and is merely on probation, subject to removal at will even by a mere majority of the Board. They insist that this contention is borne out by the history and evolution of the City Manager Act. The City Manager plan, originating some 35 or 40 years ago, has been adopted by many cities and towns throughout the United States. The essential feature of the commission form of government is toward a more compact organization, and tends to a centering of responsibility. By adopting the City Manager plan the administrative authority is concentrated in a city manager, who is supposed to have been appointed by the board of commissioners, to whom he is responsible, solely on the basis of his executive and administrative qualifications, and without reference to residence qualifications.

Our first Act was enacted in 1930, and appears in Baldwin's Revised Statutes, 1936 Edition, as follows: "Sec. 3235dd-33. City Manager; qualifications; term; removal; compensation. The city manager shall be chosen by the board of commissioners solely on the basis of his executive and administrative qualifications. The choice shall not be limited to inhabitants of the city or state. He shall be employed for an indefinite period. He shall be removable at will by the board of commissioners, but such removal shall not be effected by a reduction in the compensation of the city manager, and if removed at any time after having served for six months he may in writing demand written charges and a public hearing on the same before the board of commissioners prior to the date on which his final removal shall take effect, but during such hearing the board of commissioners may suspend him from office."

This Act was construed by this court in Rawlings v. City of Newport, 275 Ky. 183, 121 S. W. 2d 10. There the City Manager had served for more than six months and was removed for cause. However, although cited

by appellants, they admit that it rests upon different facts from the case at bar. The question presented there was whether the cause for which the City Manager was removed was legally sufficient. We answered affirmatively and upheld the removal. In passing it will be noted that the 1930 Act, which provides the city manager shall be removed at will by the board of commissioners, and if removed at any time after having served for six months, he may in writing demand written charges and a public hearing on same. It is quite obvious in looking at the above that there is in the same sentence a power of removal at will by the Board, and a provision that if after having served six months, the manager may in writing demand that written charges be made and a public hearing be had, which in effect would be a removal for cause. In other words, it would not be at will if it had to be for cause.

Obviously, it was to correct this, and make it possible for a removal at will, that the 1940 Act was passed. Acts 1940, c. 122. Now let us look at the 1940 Act. The first sentence in paragraph 2 of the Act, dealing with the question of removal, provides that a city manager shall be removable at any time without cause by the vote of four members of the board of commissioners, and shall be removable at any time for cause by a majority of the members of the board.

Now the next portion has to do with the method and manner of removal if removed by a vote of less than four of the members. If less than four of the members of the Board undertake to remove him, the Manager, if he has served for six months, may in writing demand that written charges be filed against him and a public hearing on same. And furthermore, he may appeal to the courts from the decision of the Board when removed by a vote of less than four of the five members. The provision for an appeal is significant. Ordinarily there may be no appeal from an act done pursuant to a power exercised at will. If the right of appeal is granted it must be from something.

It should be borne in mind that the above section of the statutes contains powers and rights and points out the manner they are to be exercised. What is done must be consistent with and subject to the provisions

therein. The Act definitely gives the power of removal at will or without cause by a vote of four, and for cause by a vote of less than four. Not only has it prescribed the power, but apparently has fixed a sufficient restriction on abuse or misuse of power to remove, and provides that in the event less than four undertake to remove, which power is given to that number for cause only, the manager may, if he has served as much as six months, demand written charges and a public hearing, after which he is entitled to an appeal, thus making the commissioners responsible and responsive to reasonableness in their actions.

The provisions of our 1940 Act appear to be in line with the provisions generally enacted in other states. The principles underlying the concept of the city manager form of government appear to be the same in all jurisdictions. A rejection of those principles and an obedience to whims of personalities rather than to those principles would ultimately lead to the destruction of that form of government. Temporary workable proposals for achieving immediate personal objectives are sometimes most difficult without destroying the inducements to the general plan.

We have before us splendidly prepared briefs on each side of this question, and a well-considered opinion by the chancellor. We have carefully considered the questions raised. We conclude that the language of the Act is clear and unambiguous, and that it provides for two alternative sets of circumstances under which city managers may be removed from office: (1) At any time without cause by the vote of four of the members, and (2) At any time for cause by majority vote of the members.

Wherefore, the judgment is affirmed.